[Cite as *State v. Penwell*, 2011-Ohio-6246.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

XZAVIER T. PENWELL

    Appellant

C.A. No.     25724

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 10 06 1717 (A)

DECISION AND JOURNAL ENTRY

Dated: December 7, 2011

DICKINSON, Judge.

## INTRODUCTION

{¶1} Xzavier Penwell allegedly lured Abudlmahdi Al-Garawi to a dead-end street where he shot and killed him. He then drove Mr. Al-Garawi's van across town and set it on fire. The Grand Jury indicted Mr. Penwell for aggravated murder, murder, aggravated robbery, tampering with evidence, and having a weapon while under disability. A jury found him guilty of the offenses, and the trial court sentenced him to life in prison. Mr. Penwell has appealed, arguing that his convictions are against the manifest weight of the evidence. We affirm because his convictions are not against the manifest weight of the evidence.

## FACTS

{¶2}    Jasmin Cameron testified that she was at home doing her laundry one evening when Mr. Penwell, her boyfriend, entered and asked her to make a telephone call for him. According to Ms. Cameron, Mr. Penwell told her that he wanted to buy some shoes from Mr. Al-Garawi, who sold them out of the back of a minivan. Although Mr. Penwell had Mr. Al-Garawi's number, he told Ms. Cameron that he needed her to make the call because Mr. Al-Garawi would only come out at night for female customers.

{¶3}    Ms. Cameron testified that she called Mr. Al-Garawi on a cellular phone that Mr. Penwell handed to her and arranged to meet Mr. Al-Garawi on a nearby street. When Mr. Penwell and she went outside, she saw Mr. Penwell's friend, De'Anthony Smith, waiting for them on the porch. The three of them walked to the place where Ms. Cameron had told Mr. Al-Garawi to meet her, at one point calling him again to make sure he was still coming.

{¶4}    According to Ms. Cameron, when Mr. Al-Garawi arrived, Mr. Penwell, Mr. Smith, and she approached the front-passenger door of the minivan and began talking to Mr. Al-Garawi through the open window. She was standing on the right, closest to the front of the minivan, Mr. Penwell was standing to her left, and Mr. Smith was standing somewhere behind them. Mr. Al-Garawi handed them some pictures of the types of shoes he sold, which they looked through then handed back. Ms. Cameron then asked if she could see some of the shoes, thinking that she might buy a pair for Mr. Penwell because she had not gotten him anything for his birthday yet. Mr. Al-Garawi agreed and told her to meet him at the back of the minivan. He never got there. Ms. Cameron testified that she saw Mr. Al-Garawi start to unbuckle his seatbelt as she turned to walk around Mr. Penwell on her way to the back of the van. Moments later, she heard Mr. Penwell say "lay down," followed by a gunshot. Although Ms. Cameron did not see who fired the gun, she saw the flash of gunfire reflected in the side window of the van.

{¶5} Ms. Cameron testified that, after hearing the gunshot, she ran home. As she was running down the street, she heard Mr. Al-Garawi running behind her, screaming. Several of the residents who lived on the street heard the gunshot and looked out their windows. Two of them saw two men in the front seat of a minivan, quickly backing it out of the dead-end street and saw other people running away from the van, one of whom was a woman. Other residents went outside to assist Mr. Al-Garawi, but he died at the hospital because of the severity of his injuries. That same evening, the Akron Fire Department responded to a car fire across town, discovering later that it was Mr. Al-Garawi's minivan.

{¶6} In addition to Ms. Cameron's testimony, the State offered other evidence in support of its case. It played the recording of a telephone call Mr. Penwell had with Ms. Cameron from jail in which he told her that "shit needs to get missing." The police later found some of the shoes from the minivan in Ms. Cameron's attic. Ms. Cameron explained that the reason the shoes were in her attic was because Mr. Penwell told her, a couple of days after the shooting, that he had divided the shoes with Mr. Smith. Sometime after that conversation, she was helping Mr. Penwell's mother clean her basement when she saw Mr. Penwell's half of the shoes and decided to take them to her house. The State also called Diamond Williams, who testified that, around the time of the shooting, Mr. Penwell tried to sell her brother a pair of shoes. When Ms. Williams asked Mr. Penwell where he had gotten the shoes, Mr. Penwell answered that he "had shot a dude" for them. Ms. Williams did not believe him until she saw a newspaper story about Mr. Al-Garawi's death. The State also played a recording of Mr. Penwell's interview with the police, in which he admitted being at the robbery, but not being part of the attack. In addition, the State presented evidence that the cell phone from which the call to

Mr. Al-Garawi before his death had been made was also used to make calls that same evening from the area of the city where Mr. Al-Garawi's van was set on fire.

MANIFEST WEIGHT

{¶7}    Mr. Penwell's assignment of error is that his convictions are against the manifest weight of the evidence.  If a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

{¶8}    Mr. Penwell has argued that Ms. Cameron's testimony was not credible.  He has noted that, the first time Ms. Cameron spoke to the police, she said she was walking home with Mr. Penwell when she heard a gunshot and claimed that Mr. Penwell and she had nothing to do with the robbery.  The second time she spoke to the police, a detective promised her that, no matter what she said, she would be able to go home that day.  It was during that second interview that Ms. Cameron incriminated Mr. Penwell.  Mr. Penwell has also argued that Ms. Cameron was biased against him because, even though she said she still loved him, she learned after the robbery that he had been seeing other women behind her back.

{¶9}    There is no evidence in the record to suggest that Ms. Cameron knew Mr. Penwell had cheated on her before the second time she spoke to the police.  In addition, the other evidence presented by the State supports Ms. Cameron's testimony.  Two residents who live near

where the robbery occurred testified that, after they heard a gunshot, they looked out the window and saw two men driving away in a minivan and others running down the road, one of whom was a woman. After Mr. Penwell told Ms. Cameron that "shit needs to get missing," the police found a number of brand-new shoes that were the same types Mr. Al-Garawi sold hidden in Ms. Cameron's attic. After the robbery, Mr. Penwell attempted to sell shoes to Ms. Williams's brother and told Ms. Williams that he shot a man to get them. Mr. Penwell also admitted to police that he was at the scene of the robbery, alleging it was two friends of his who robbed Mr. Al-Garawi and that he was merely a "third wheel."

{¶10} Upon review of the record, we conclude that the jury did not lose its way when it convicted Mr. Penwell of aggravated murder, murder, aggravated robbery, tampering with evidence, and having a weapon while under disability. Mr. Penwell's assignments of error are overruled.

CONCLUSION

{¶11} Mr. Penwell's convictions are not against the manifest weight of the evidence. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(E).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CLAIR E. DICKINSON
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR

APPEARANCES:

THOMAS M. DICAUDO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.